Argued and submitted September 9, 1997, decision of Court of Appeals reversed in part; judgment of circuit court affirmed in part and reversed in part May 29, 1998

## LANE TRANSIT DISTRICT,
a municipal corporation,
*Petitioner on Review,*

*v.*

## LANE COUNTY, OREGON,
a municipal corporation,
and Annette Newingham,
Chief Deputy County Clerk of
Lane County, Oregon,
*Defendants,*

*and*

## CITIZENS FOR RESPONSIBLE PUBLIC TRANSIT,
a registered political action committee,
*Respondent on Review.*

(CC 16-95-02904; CA A89559; SC S44061)

957 P2d 1217

Joel S. DeVore, of Luvaas, Cobb, Richards & Fraser, P.C., Eugene, argued the cause and filed the petition on behalf of petitioner on review.

Susan L. Stoner, Portland, argued the cause and filed the brief on behalf of respondent on review.

Paul Snider, Legal Counsel, Association of Oregon Counties, Salem, filed a brief on behalf of *amicus curiae* Association of Oregon Counties.

Gerald G. Watson, of Churchill, Leonard, Brown, Lodine & Hendrie, LLP, Salem, filed a brief on behalf of *amicus curiae* League of Oregon Cities.

Jeffrey M. Batchelor, of Lane Powell Spears Lubersky, LLP, Portland, argued the cause and filed a brief on behalf of *amici curiae* Tri-County Metropolitan Transportation District and Eugene Public Schools, District 4J.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

KULONGOSKI, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision. Graber, J., resigned March 31, 1998, and did not participate in this decision.

## KULONGOSKI, J.

■       This case concerns a proposed initiative measure filed by Citizens for Responsible Public Transit (Citizens) for a vote by the electors of the Lane Transit District (LTD). The measure, if enacted, would reduce the current salary of LTD's general manager and would establish procedures by which that salary could be increased. We are called upon to decide whether the subject matter addressed by the proposed initiative measure is legislative or administrative in nature.[1] For the reasons that follow, we hold that the subject matter of the proposed initiative measure is administrative in nature and therefore not properly the subject of the initiative process.

We take the relevant facts, which are undisputed, from the majority opinion of the Court of Appeals:

"LTD is a mass transit district that serves the Eugene and Springfield areas. It is governed by a board of directors (board), the members of which are appointed by the Governor, subject to confirmation by the state Senate. ORS 267.090. The board, in turn, appoints a general manager, who holds that office indefinitely, subject to removal by the board. ORS 267.135. The general manager is the only LTD employee appointed directly by the board. All others are hired and supervised by the general manager.

"The current general manager was hired 16 years ago. Her current annual salary is approximately $77,000. The general manager negotiates her salary with the board each year. The salary is not determined by reference to any particular schedule of ranges or steps. According to the chair of the board, it is instead based on a comparison of compensation for general managers in comparable transit districts. The board also takes into account general principles expressed in a 'Salary Administration Policy,' which governs salary determinations for other nonbargaining-unit employees by reference to salary grades and ranges within each grade as determined by a salary administration committee that is chaired by the general manager. Those general principles include a commitment to 'fair and equitable

---

[1] The constitutional reservation of the initiative power in Article IV, section 1(5), applies only to "municipal legislation." *Foster v. Clark*, 309 Or 464, 471-72, 790 P2d 1 (1990). For that reason, proposed initiative measures addressing administrative matters properly are excluded from the ballot. *Id.* at 472.

compensation based on the relative value of each position within LTD,' with due consideration to 'rates of pay in like positions, for comparable work in the marketplace, and the District's financial position.' However, by its terms, the Salary Administration Policy does not govern the determination of the general manager's salary; it describes policies that the general manager is to implement in setting salaries of employees subject to her authority. Nevertheless, there was uncontradicted testimony that, in the past, the board has taken into account some of the general considerations contained in the policy in setting the general manager's salary.

"Unhappy with the general manager's current salary and the method by which it has been determined, Citizens filed a proposed initiative measure containing the following language:

" 'The people of Lane Transit District ordain as follows:

" 'Section 1.    The qualifications do not justify the salary and benefits provided for and approved by the Lane Transit District Board when compared to other positions with equal or greater authority and responsibility.

" 'Section 2.    The annual salary for the Lane Transit District general manager (as the highest paid District employee) shall not exceed $49,000. In addition, benefits provided to the general manager shall not exceed the benefits authorized for other Lane Transit District employees. It is the intent of this section to severely limit benefits to the general manager not accorded other employees.

" 'Section 3.    The $49,000 salary limitation may be increased on an annual basis in an amount not to exceed the annual increase granted to the lowest paid, bona fide, full-time employee of the Lane Transit District.

" 'Section 4.    Other than as provided in Section 3, the salary limitation may be changed only by a vote of the people at a general election.

" 'Section 5.   Severability. If a court should hold invalid or unconstitutional any clause or part of this Ordinance, that holding shall not affect the remaining parts of this Ordinance that are not held invalid or unconstitutional.' "

*Lane Transit District v. Lane County*, 146 Or App 109, 111-13, 932 P2d 81 (1997) (boldface in original). Citizens then filed with Lane County the required number of supporting signatures, and the County certified the measure to the local ballot. *Id.* at 113.

LTD brought this action against Lane County, seeking a declaration that, among other defects, the proposed initiative measure was administrative in nature and therefore not properly addressed through the initiative process. Additionally, LTD sought an order enjoining Lane County and its elections officer from placing the proposed initiative measure on the local ballot. *Id.* Citizens intervened as a defendant and moved for dismissal, alleging that LTD had failed to state a claim for which relief could be granted and that the circuit court lacked subject-matter jurisdiction. LTD moved for summary judgment, arguing that the court had subject-matter jurisdiction and that Citizens' proposed initiative measure was administrative in nature. After the circuit court denied Citizens' motion for dismissal, Citizens also moved for summary judgment. The circuit court denied Citizens' motion for summary judgment, granted LTD's motion for summary judgment, and entered an order enjoining Lane County and Lane County's chief deputy clerk from placing the proposed initiative measure on the ballot. *Id.* at 114. Citizens appealed.

The Court of Appeals reversed the judgment of the circuit court and remanded, concluding that the proposed initiative measure is legislative in nature and that the circuit court therefore erred in granting summary judgment to LTD and in enjoining placement of the proposed initiative measure on the local ballot. *Id.* at 122. We allowed LTD's petition for review and now reverse in part the decision of the Court of Appeals.[2]

---

[2] In addition to granting summary judgment to LTD because the subject matter of the proposed initiative measure was administrative in nature, the trial court

On review of a summary judgment, we must determine whether there is a genuine issue as to any material fact and whether LTD is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Here, there is no dispute as to any material fact. Therefore, we review the relevant constitutional and statutory provisions in order to determine whether LTD is entitled to judgment as a matter of law.

Article IV, section 1(1), of the Oregon Constitution, reserves to the people the powers of initiative and referendum. Article IV, section 1(5) further provides:

> "The initiative and referendum powers reserved to the people * * * are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district."

In *Foster v. Clark*, 309 Or 464, 472, 790 P2d 1 (1990), this court noted that the constitutional reservation of the initiative power in Article IV, section 1(5) applies only to "municipal legislation." Proposed initiative measures addressing administrative matters properly are excluded from the ballot. *Id.* The operative word is "legislation."[3] This court has defined legislative activity as "making laws of general applicability and permanent nature," *id.*, and administrative activity as that "necessary * * * to carry out legislative policies and purposes already declared." *Monahan v. Funk*, 137 Or 580, 584, 3 P2d 778 (1931).

In *Foster*, this court was called upon to answer the same question addressed in this case: whether the subject matter of a local proposed initiative measure, which sought

---

also ordered Citizens to pay LTD's labor costs related to the production of documents. The Court of Appeals reversed on that issue. *Lane Transit District v. Lane County*, 146 Or App at 123-24, 932 P2d 81 (1997). Because the petition for review did not address that issue, we do not discuss it here.

[3] ORS 267.170(1), part of the statutory framework created by the legislature to govern the operation of mass transit districts, also specifies that the initiative process, as it relates to matters associated with transit districts, is limited to legislative matters:

> "The electors of a district may exercise the powers of the initiative and referendum with reference to *legislation* of the district, in accordance with ORS 255.135 to 255.205." (Emphasis added.)

to rename a Portland street, was "legislative" or "administrative" in nature. The *Foster* court determined that sections 17.93.010 to 17.93.060 of the Portland City Code constituted "a complete scheme for changing Portland city street names, including rules on petition forms, fees, review by various City officials, and final consideration by the City Council," and that the scheme was a "completed legislative plan, requiring no further legislative contribution." *Foster*, 309 Or at 473. The court then held that the subject matter of the proposed initiative measure, the renaming of Martin Luther King, Jr., Boulevard, was administrative in nature, and not legislative, because the proposed initiative measure was filed after the legal framework governing the renaming of Portland city streets was in place. *Id.* at 473-74. This court has stated that a particular activity is "administrative," and not "legislative," if it does not set new policy, but merely carries out legislative policies and purposes already declared. *Monahan*, 137 Or at 584. Because the subject matter of the proposed initiative measure addressed in *Foster* was administrative in nature, it was not appropriately addressed through the initiative process. *Foster*, 309 Or at 474.

In this case, a completed legislative plan for the appointment, compensation, and removal of a transit district general manager is declared in ORS 267.135 and ORS 267.200(5). ORS 267.135(1) specifies that the transit district board has the power and is required to appoint a general manager:

> "The board shall appoint a general manager on the basis of the qualifications of the general manager with special reference to the actual experience in or knowledge of accepted practices in respect to the duties of the office of the general manager. A general manager shall hold office for an indefinite term and may be removed by the board only by an affirmative vote of a majority of the members."

The express power to appoint the general manager is coupled with the express power to set the compensation for that position. ORS 267.200(5) provides that a transit district "shall have full power to carry out the objects of its formation," including the power to "employ * * * persons and fix their compensation."[4] ORS 267.135(2) provides that the transit

---

[4] The express power to appoint the general manager carries with it an implied power to fix the terms of the general manager's employment, including salary and

district board has the power to remove a general manager and provides the procedures for doing so:

> "Before a general manager is removed, the general manager shall upon demand be given a written statement of the reasons for removal. If requested, the general manager shall be given an open hearing at a meeting of the board before the final vote for removal. However, the board may by resolution suspend the general manager from office pending a hearing. The action of the board in suspending or removing a general manager, if approved by a majority of the members of the board, may be reconsidered by the board but is otherwise final and not subject to appeal."

Together, ORS 267.135 and ORS 267.200(5) thus declare as legislative policy of the state that the board of a transit district shall have the power to appoint a general manager for the district, to fix the terms of employment for that position, including compensation (*i.e.*, salary and benefits), and to remove the general manager. This legal structure, like the City of Portland's street-naming policy at issue in *Foster*, constitutes "a completed legislative plan" for LTD's appointment, compensation, and removal of a general manager. *Foster*, 309 Or at 473. This completed legislative plan "requir[es] no further legislative contribution." *Id.*

The proposed initiative measure purports to set the salary and benefits for the general manager of LTD. That is an administrative task under the existing legal framework we have set out above. *Foster*, 309 Or at 474-75. Because Citizens' proposed initiative measure is administrative in nature, and not legislative, we hold that the trial court properly removed the proposed initiative measure from the ballot and granted summary judgment to LTD. The Court of Appeals improperly reversed the trial court's grant of summary judgment on that issue.

■      The fact that the proposed initiative measure contains a severability clause does not alter our conclusion. By its terms, the severability clause is (and would have to be) aimed at judicial construction of the measure after (and if) it

---

benefits: "[W]here a power is conferred by an act, everything necessary to carry out that power and make it effectual and complete will be implied." *Pioneer Real Estate Co. v. City of Portland*, 119 Or 1, 10, 247 P 319 (1926). *See also Fales v. Multnomah Co. et al.*, 119 Or 127, 133, 248 P 151 (1926) ("When a power is given by statute everything necessary to make it effectual is given by implication.").

becomes an "Ordinance," *i.e.*, after it is adopted. Here, however, the proposed initiative measure suffers from a defect that makes the very act of submitting it to a vote legally inappropriate. The severability clause thus is inapplicable.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court is affirmed in part and reversed in part.[5]

---

[5] The Court of Appeals reversed the judgment of the circuit court on the discovery costs issue. *See* 327 Or at 166 n 2.