Argued and submitted January 16, University of Oregon, Eugene, reversed and remanded November 19, 2014, petition for review allowed April 9, 2015 (357 Or 143)

Casey J. DECKARD,
*Plaintiff-Appellant,*

*v.*

Diana L. BUNCH,
*Defendant,*
*and*

Jeffrey N. KING,
as Personal Representative of
the Estate of Roland King, Deceased,
*Defendant-Respondent.*

Lincoln County Circuit Court
102298; A151792

340 P3d 655

Brent A. Barton argued the cause for appellant. With him on the briefs were William A. Barton and The Barton Law Firm, P.C.

Thomas M. Christ argued the cause for respondent. With him on the brief was Cosgrave Vergeer Kester LLP.

Before Hadlock, Presiding Judge, and DeVore, Judge, and Schuman, Senior Judge.

DEVORE, J.

**DEVORE, J**

Plaintiff, Casey Deckard, appeals a judgment that dismissed his claim against defendant, the personal representative of the estate of Roland King, based on statutory liability for serving alcohol to a visibly intoxicated person.[1] The issue in this case is whether ORS 471.565 creates statutory liability by which a person injured in an automobile accident may bring a claim against the social host who provided alcohol to a visibly intoxicated person. In reviewing the trial court's ruling dismissing plaintiff's claim, "we assume that the facts alleged in the complaint are true and draw all reasonable inferences in plaintiff's favor." *Bailey v. Lewis Farm, Inc.*, 343 Or 276, 278, 171 P3d 336 (2007). We "determine whether [the] pleadings and reasonable inferences therefrom state a claim as a matter of law." *State ex. rel. Glode v. Branford*, 149 Or App 562, 565, 945 P2d 1058 (1997), *rev den*, 326 Or 389 (1998). We reverse and remand.

The pertinent facts arose from an automobile accident that resulted in serious injuries to plaintiff. He was driving on Highway 101 when a heavily intoxicated driver, Diana Bunch, crossed into his lane and collided head-on into his car. Bunch had consumed a number of drinks at King's house shortly before she drove and had a blood-alcohol content of 0.22. An officer testified that she was so intoxicated that she could not perform field sobriety tests, and she was not able to speak comprehensibly.

Plaintiff brought an action against Bunch and King, alleging, as to each, common-law negligence and, as to King, statutory liability under ORS 471.565 for serving alcohol to a visibly intoxicated person. King sought dismissal of the statutory claim for failure to state a claim which the trial court granted. ORCP 21 A(8). In its order, the trial court agreed with King that ORS 471.565 does not create a statutory cause of action and is only a limitation on existing common-law claims against alcohol servers and hosts. Plaintiff proceeded to trial on his negligence claims against Bunch and King. The jury found liability as to Bunch, awarding damages, but did not find King to be negligent.

---

[1] Roland King died in the year after events at issue here. In this opinion, we refer to him or the estate as "King."

On appeal, plaintiff assigns error to the trial court's dismissal of the statutory claim. He argues that the trial court erred in determining that ORS 471.565 does not create a cause of action in favor of third parties who are injured by drunk drivers. Plaintiff contends that the Oregon Supreme Court has recognized the statutory liability of social hosts who served alcohol to visibly intoxicated guests. King, on the other hand, views ORS 471.565 as a limitation on common-law liability, rather than as a statutory basis for recovery.[2] Alternatively, he argues that, even if it was error to dismiss the statutory claim, there was no harm, because the jury was instructed regarding liability for providing alcohol to a visibly intoxicated person.

To determine whether the legislature has created statutory liability, we follow the analysis set out in *Scovill v. City of Astoria*, 324 Or 159, 166, 921 P2d 1312 (1996), and reiterated recently.[3] "Whether a statute does so is a question of statutory interpretation." *Doyle v. City of Medford*, 356 Or 336, 344, 337 P3d 797 (2014). "To prevail on a statutory liability claim, a plaintiff must be within the class of persons that the legislature intended to protect, and the harm must be of the sort that the legislature intended to prevent or remedy." *Id*. Where a duty exists, we must then determine whether "the text and context show that the legislature contemplated that a failure to act according to that duty gives rise to a potential liability in tort." *Doyle v. City of Medford*, 256 Or App 625, 634, 303 P3d 346 (2013), *rev'd on other grounds*, 356 Or 336, 337 P3d 797 (2014) (citing *Scovill*, 324 Or at 166); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Legislative history may aid

---

[2] For example, *Hawkins v. Conklin*, 307 Or 262, 268, 768 P2d 66 (1988), illustrates that *former* ORS 30.950 (1979), *renumbered* as ORS 471.565 (2001), limited common-law negligence claims by requiring that a plaintiff allege that the licensee or permittee served alcohol to the person who injured the plaintiff when that person was visibly intoxicated. *Hawkins*, however, did not indicate that a claim in statutory liability cannot be brought. It did not address or resolve the issue presented in this case.

[3] Oregon courts and litigants have used the term "statutory tort," but we use "statutory liability" as the more precise term. *Doyle v. City of Medford*, 356 Or 336, 344 n 6, 337 P3d 797 (2014) (statutory liability "is a more precise term than 'statutory tort'"); *see also Dunlap v. Dickson*, 307 Or 175, 179 n 3, 765 P2d 203 (1988) ("We prefer to use the term 'statutory liability' in place of the term 'statutory tort.'").

in determining the legislature's intent in enacting the statute. *State v. Gaines*, 346 Or 160, 173, 206 P3d 1042 (2009). Statutory liability does not depend on an express intention by legislature to create liability; the intention to create a right of action for the violation of a statutory duty may be implied. *Doyle*, 354 Or at 361.

The parties' core disagreement about legislature's intention requires that we begin with the history of liability for social hosts who serve alcohol to visibly intoxicated patrons. That history begins before ORS 471.565, with the common-law claims in *Campbell v. Carpenter*, 279 Or 237, 566 P2d 893 (1977). In *Campbell*, two people had been killed by a drunk driver. The court recounted that a tavern had provided alcohol to a patron even after she was "'perceptibly under the influence of intoxicating liquors'" and the tavern knew or should have known that the patron would drive after imbibing. *Id.* at 239. In its seminal decision, the Supreme Court recognized common-law negligence as a theory of liability, concluding that "a tavern keeper is negligent if, at that time of serving drinks to a customer, that customer is 'visibly' intoxicated because at the time it is reasonably foreseeable that when such a customer leaves the tavern he or she will drive an automobile." *Id.* at 243-44.

Legislation followed *Campbell* codifying liability for hosts who serve alcohol to visibly intoxicated patrons, at least where a third party was injured. The legislature enacted *former* ORS 30.950 (1979), *renumbered* as ORS 471.565 (2001).[4] That statute was implicated in the Supreme Court's next significant opinion, *Chartrand v. Coos Bay Tavern*, 298 Or 689, 696 P2d 513 (1985). Like this case, the

---

[4] *Former* ORS 30.950 provided:

"No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated."

In 1987, the legislature repealed *former* ORS 30.955 and amended *former* ORS 30.950 so that the latter statute would apply to social hosts and licensees and permittees. Or Laws 1987, ch 774, §§ 13-14. *See former* 30.955 (1979), *repealed by* Or Laws 1987, ch 774, § 14 (governing liability of social hosts). The relevant portion of the statute was again amended in 1997 for reorganizing, correction of syntax, and addition of a notice requirement. Or Laws 1997, ch 841, § 1.

plaintiff in *Chartrand* was injured by a drunk driver who drove "onto the wrong side of the road and into a head-on collision with the plaintiff, causing serious personal injuries." *Id.* at 691. The owner of a tavern was alleged to have supplied alcohol to the driver while she was visibly intoxicated. At trial, the jury found in favor of the plaintiff and awarded damages. The tavern owner appealed, challenging the trial court's jury instruction. In discussing the plaintiff's possible claims, the court described three theories of recovery, including statutory liability pursuant to *former* ORS 30.950. 298 Or at 695-96. The court observed that

> "[t]he legislature by stating, or implying in reverse language, that a tavern owner will be held liable for the acts of a person who has been served alcoholic liquor while visibly intoxicated, resolved the foreseeability issue as a matter of law. Thus, a plaintiff protected by such a statute need not resort to any concepts of negligence. Negligence is irrelevant. The sole question is whether the defendant engaged in acts prohibited by the statute and whether the violation of the statute resulted in injury."

*Id.* at 696. The court turned to the absence of a jury instruction on forseeability in the common-law claim. The court concluded that "the case was pled as a common-law negligence claim and the instruction did not inform the jury that the plaintiff must prove that it was reasonably foreseeable to defendant that its customer, on leaving the tavern, would drive a car." *Id.* at 692, 695. The case was reversed and remanded for a new trial.

Of significance to the case at hand, the *Chartrand* court related the relevant legislative history of *former* ORS 30.950. The legislation was spurred by "commercial hosts" who, after unfavorable decisions in common-law negligence cases, were concerned about liability insurance. 298 Or at 697. The original version of the bill was an attempt to narrow hosts' potential liability. It had proposed to raise the standard for liability to gross negligence, but that standard was eventually deleted from the bill in committee. The court noted that

> "[d]eletion of the gross negligence standard left the final version of the bill with two sections that *provide for host liability for all damages caused or incurred off-premises by an*

*intoxicated person who, while visibly intoxicated, was served
alcoholic beverages by a commercial or social host, with no
reference to proof of any form of negligence.* The risk, the
harm and the potential plaintiff were all foreseen by the
lawmaker."

*Id.* (emphasis added). Thus, the court in *Chartrand* left no
doubt that *former* ORS 30.950 gave rise to statutory liability
of a commercial or social host who serves alcohol to a visibly
intoxicated person.

The Supreme Court was again called upon to con-
sider the application of *former* ORS 30.950 in *Gattman v.
Favro*, 306 Or 11, 757 P2d 402 (1988). Unlike the drunk-driv-
ing backdrop of *Chartrand*, the plaintiff in *Gattman* was vio-
lently assaulted by a drunken patron, Favro. The plaintiff
brought a statutory liability action alleging that a lounge
had served Favro alcohol while he was visibly intoxicated,
that Favro left the premises, and that he stabbed the plain-
tiff. *Id.* at 13. The defendants moved for dismissal of the
statutory liability claim pursuant to ORCP 21 A(8), and
the trial court granted the motion. On review, the Supreme
Court concluded that the trial court did not err in dismiss-
ing the plaintiff's claim. 306 Or at 15.

Significantly, the *Gattman* decision indicated what
statutory liability was, when it decided what it was not. The
court explained that *former* ORS 30.950 was intended to
protect only those plaintiffs injured in drunk-driving acci-
dents. *Id.* at 22. The court discerned that the legislature
had not intended to create "licensee and permittee liability
for *all actions*" in which an injured plaintiff could establish
that a host had furnished a visibly intoxicated patron with
alcohol. *Id.* (emphasis added). The court emphasized that,
in discussing the bill, legislators focused exclusively on
fact patterns involving "the context of automobile or traffic
related injuries." *Id.* at 22 (citing Minutes, House Committee
on Judiciary, June 28, 1979, June 26, 1979, June 27,
1979; Minutes, Senate Committee on State and Federal
Affairs and Rules, June 30, 1979). Consistently with that
legislative history, the court distinguished *Chartrand*. The
court noted that "*Chartrand* involved a claim for injuries
arising from the very risk with which the legislature was
concerned, the intoxicated driver," whereas the plaintiff in

*Gattman* was "not within the class of persons intended to be protected by the statute and the harm is not of a type intended to be protected against."[5] 306 Or at 23-24; *see also Moore v. Willis*, 307 Or 254, 257, 767 P2d 62 (1988) ("if ORS 30.950 creates statutory liability, the remedy is not available to plaintiffs" who are shot or stabbed). In that way, the court distinguished prospective plaintiffs who fell within the protection of the statute and, as a consequence, indicated that *former* ORS 30.950 provided a theory of recovery for those plaintiffs.

The issue of statutory liability would not re-emerge for more than a decade. The court returned to the issue in *Grady v. Cedar Side Inn, Inc.*, 330 Or 42, 997 P2d 197 (2000). In *Grady*, the plaintiff was injured in a car accident while he was the passenger of a drunk driver. The plaintiff had participated in the driver's intoxication by providing alcohol throughout the day. He sought recovery from Cedar Side Inn for serving alcohol to the driver while the driver was visibly intoxicated. *Id.* at 44. The defendants moved for summary judgment, and the trial court granted the motion. The plaintiff appealed, and, on review, the Supreme Court concluded that "nothing in the statute itself, or the cases construing it, * * * suggest that plaintiff is barred, as a matter of law, from recovery under ORS 30.950." 330 Or at 48-49.

In reaching its decision in *Grady*, the court deemed *former* ORS 30.950 to create statutory liability and labored to resolve only whether plaintiffs, under the circumstances of the case, fell within the statute's purview. 330 Or at 49 ("ORS 30.950 subjects licensees, permittees, and social hosts to liability to third parties for injuries caused by the intoxicated patron or guest whom they served."). After examining the text and context of *former* ORS 30.950, the court concluded that there was no evidence of legislative intent to

---

[5] The court compared its result to that in *Sager v. McClenden*, 296 Or 33, 37, 672 P2d 697 (1983). That case involved a wrongful death claim pursuant to *former* ORS 30.950 after the decedent fell while drunk and sustained fatal injuries. The plaintiff in *Sager*, as personal representative for the decedent, alleged that two cocktail lounges and a bartender were liable for serving alcohol to the decedent while he was visibly intoxicated. The court concluded that *former* ORS 30.950 did not create "a new claim for a person harmed as a result of *his or her own intoxication.*" 296 Or at 36 (emphasis added).

"limit liability under the statute to claims made by 'innocent' third parties." 330 Or at 48. "[T]he legislative history of the statute and the cases construing it focus entirely on *liability to third parties* injured by intoxicated drivers," but the legislature had not distinguished a focus of the statute regarding "innocent" and "non-innocent" third parties. *Id.* (emphasis added).

In 2001, the legislature revised *former* ORS 30.950 to address recovery for "non-innocent" plaintiffs. Or Laws 2001, ch 534, § 1.[6] Legislative Counsel renumbered the statute as ORS 471.565. As the court observed in *Grady*, prior to 2001, the statute had not limited liability as to a plaintiff who contributed to the intoxication of the patron or guest. *Id.* The revised statute provided, in relevant part:

"(1)  A patron or guest who voluntarily consumes alcoholic beverages served by a person licensed by the Oregon Liquor Control Commission, a person holding a permit issued by the commission or a social host does not have a cause of action, based on statute or common law, against the person serving the alcoholic beverages, even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated. The provisions of this subsection apply only to claims for relief based on injury, death or damages caused by intoxication and do not apply to claims for relief based on injury, death or damages caused by negligent or intentional acts other than the service of alcoholic beverages to a visibly intoxicated patron or guest.

"(2)  A person licensed by the Oregon Liquor Control Commission, person holding a permit issued by the commission or social host is not liable for damages caused by

---

[6] The revisions were not solely a response to *Grady*. In *Fulmer v. Timber Inn Restaurant and Lounge, Inc.*, 330 Or 413, 427, 9 P3d 710 (2000), the court concluded that a "plaintiff may bring a common-law negligence action against a person or entity that negligently supplied alcohol to the plaintiff when he or she already was visibly intoxicated and the plaintiff suffered injuries caused by that negligent conduct." In that case, the plaintiffs, a husband and wife, alleged that a tavern had served alcohol to the husband while he was visibly intoxicated and that he subsequently sustained serious injuries from a fall down the tavern stairs. *Id.* at 416-17. Much of the relevant legislative history regarding ORS 471.565(1) relates to the legislature's concern with preserving claims based on premises liability. *See* Minutes, House Committee on the Judiciary, May 23, 2001, 3 (statement of Rep Shetterly on premises liability claims).

intoxicated patrons or guests unless the plaintiff proves by clear and convincing evidence that:

"(a) The licensee, permittee or social host served or provided alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and

"(b) The plaintiff did not substantially contribute to the intoxication of the patron or guest ***[.]"

ORS 471.565.

The legislative history of ORS 471.565 does not support an inference that the legislature intended to wholly eliminate statutory liability. To the contrary, legislative history indicates only an intention to exclude "non-innocent" plaintiffs who contributed to their own intoxication or who were complicit in the intoxication of a patron.[7] *See, e.g.*, Minutes, Senate Committee on the Judiciary, Mar 13, 2001, 1 (the focus of the bill is to eliminate claims for intoxicated persons who injure themselves). The legislative history demonstrates a continued concern to preserve liability as to hosts for harm caused to innocent third parties in drunk-driving accidents. For example, a representative for the Oregon Restaurant Association testified that

"[the bill] doesn't apply to injuries that are caused to third parties. So if [an intoxicated patron] goes out and is in an automobile accident and kills or injures somebody else, that business owner or host is still going to be liable to the third party."

Tape Recording, House Committee on Judiciary, SB 925, May 23, 2001, Tape 69, Side A (statement of Bill Perry). Similarly, Representative Lane Shetterly explained that the bill would not encourage hosts to serve visibly intoxicated guests because of a continued risk of liability if harm befalls third parties:

"[The] greater risk [in over-serving a guest] is that they're going to go out and hurt somebody else, in which case the bar owner is still going to be liable."

---

[7] We have described ORS 471.565(2)(b) as "the complicity doctrine." *See, e.g.*, *Baker v. Croslin*, 264 Or App 196, 198, 330 P3d 698, *rev allowed*, 356 Or 400 (2014).

Tape Recording, House Committee on Judiciary, SB 925, May 23, 2001, Tape 69, Side A (statement of Rep Lane Shetterly). In other words, the revised text did not undermine the court's conclusion in *Chartrand*, 298 Or at 695-96, that an innocent third-party could rely on a statutory claim.

In this case, defendant nevertheless argues that ORS 471.565 does not create statutory liability and only serves as a limit to common-law claims. In support of that contention, he views the discussion of statutory liability in *Chartrand* as *dictum* that was later set aside in *Gattman*. Defendant contends that the legislative history supports his view. As we have recounted, however, that is not the case. There is no indication that the court's observation in *Chartrand* was implicitly overruled. Indeed, the Supreme Court recently relied on its statement in *Chartrand* "that the legislature intended to create statutory liability." *Doyle*, 356 Or at 351. We are unaware of any legislative history that would undermine the Supreme Court's analysis in *Chartrand*.

For years, cases have recognized, even if not directly held, that ORS 471.565 creates statutory liability for plaintiff's class of injured persons. *See Doyle*, 356 Or at 360, 378 (observing that the court in *Chartrand* concluded that the legislature intended to create statutory liability); *see also Davis v. Campbell*, 144 Or App 288, 292-93, 925 P2d 1248 (1996), *aff'd*, 327 Or 584, 965 P2d 1017 (1998) (recognizing statutory liability pursuant to *former* ORS 30.950). Prior judicial construction serves an important purpose in our current understanding of legislative intent. *See, e.g., State v. Cloutier*, 351 Or 68, 100, 261 P3d 1234 (2011) ("Our analysis of [the statute] is also informed by this court's prior construction of that statute or its predecessors."); *Blacknall v. Board of Parole*, 348 Or 131, 142, 229 P3d 595 (2010) ("As context, *** [prior] cases may illuminate or explain the meaning of the statutory text.").

In light of the court's observations and the history, text, and context of ORS 471.565, we hold that the legislature intended to create statutory liability. *Doyle*, 356 Or at 378 (observing that in *Chartrand* "the court concluded that the legislature itself had intended to provide a remedy for a statutory violation"). Legislators responded to a foreseeable

risk posed by serving alcohol to someone visibly intoxicated and created a statutory basis of relief. In doing so, "[t]he risk, the harm, and the potential plaintiff were all foreseen by the lawmaker," and the need to rely on the common law was eliminated. *Chartrand*, 298 Or at 697. This case arose from the very risk which the legislature addressed—a drunk driver who allegedly had been served alcohol while she was visibly intoxicated. Therefore, the trial court erred in dismissing plaintiff's statutory claim.

Defendant argues that any error was harmless. To warrant reversal, an erroneous trial court ruling must be prejudicial. *Scanlon v. Hartman*, 282 Or 505, 511, 579 P2d 851 (1978); *see also* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). Defendant contends that the dismissal of the statutory liability claim "appears to have made no difference." Defendant asserts that the jury received the instruction that would have been given had the statutory liability claim gone forward, yet the jury still did not find any liability as to King. Defendant treats the following instruction as to King as if it were a description in its entirety of his potential liability:

> "To recover against Defendant King, the plaintiff must prove two things. One, that by clear and convincing evidence, Roland King served or provided defendant Bunch alcohol when [she] was visibly intoxicated, and, two, that Roland King's serving or * * * providing alcohol to Diana Bunch while visibly intoxicated was a cause of damage to plaintiff."

Defendant suggests that the statutory claim, previously dismissed, surfaced nonetheless in this instruction. We disagree.

When viewed in context, that instruction did not serve to provide the jury with a distinct, statutory claim. Defendant takes the instruction out of context. With the statutory claim dismissed, the pleadings left only negligence claims as against Bunch and King. The instructions explained that there were different standards of proof. The claim against Bunch required proof by a preponderance of evidence, while the claim against King required clear and

convincing evidence.[8] Otherwise, the instructions pertained to both defendants. The court instructed:

> "Negligence and Causation. The law assumes that all persons have obeyed the law and been free from negligence. The mere fact alone that an accident happened or that a person was injured is not sufficient proof of itself to prove negligence. It is, however, a circumstance that may be considered along with other evidence."

The court advised the jury that Bunch had admitted negligence. It then gave the instruction on which defendant relies. In context, that instruction served only to raise the standard of proof by indicating that plaintiff must prove by clear and convincing evidence that King served alcohol to Bunch while she was visibly intoxicated. It was immediately followed by further instructions to help the jury with its task of assessing negligence:

> "Common Law Negligence. The law requires every person to use reasonable care to avoid harming others. Reasonable care is the degree of care and judgment used by reasonably careful people in the management of their own affairs to avoid harming themselves or others.
>
> "In deciding whether a party used reasonable care, consider the dangers apparent or reasonably foreseeable when the events occurred. Do not judge the party's conduct in light of subsequent events. Instead, consider the party—what the party knew or should have known at the time.
>
> "A person is negligent, therefore, when the person does some act that a reasonably careful person would not do or fails to do something that a reasonably careful person would do under the similar circumstances.
>
> "*A person is liable only for reasonably foreseeable consequences of their actions.* There are two things that must be foreseeable. One, the Plaintiff must be within the general class of persons that one would reasonably—that one reasonably would anticipate might be threatened by the Defendant's conduct. Two, the harm suffered must be

---

[8] On appeal, no assignment of error is made challenging the trial court's instructions. We express no opinion whether the standard of clear and convincing evidence properly applied to plaintiff's common-law negligence claim against King.

within the general class of harms that one reasonably would anticipate might result from the Defendant's conduct."

(Emphasis added.) Insofar as Bunch had admitted liability, the negligence instructions pertained only to King. Because explanations about negligence preceded and followed the elevated standard of proof on serving an intoxicated person, a jury would have understood the instructions about negligence, reasonable care, and foreseeability all to be prerequisites to King's liability of any sort. After all, "[a] person is liable *only* for reasonably foreseeable consequences of their actions." That evaluation, of course, was already made when the legislature provided statutory liability for serving a visibly intoxicated person. Nothing told the jury that liability for such conduct followed without proof of negligence. Thus, the instructions did not resurrect the statutory claim. The error was not harmless.

Reversed and remanded.